Ernesto **CARNALLA–MUNOZ,** and wife, **Teodora Reza de Carnalla,** Petitioners,

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 79–7388.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1980.

Decided Sept. 15, 1980.

Jack T. Price, Los Angeles, Cal., argued, for petitioners.

Howard Gest, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before ALARCON and NELSON, Circuit Judges and JAMESON,* District Judge.

JAMESON, District Judge:

Ernesto Carnalla-Munoz and Teodora Reza de Carnalla, his wife, seek review of an order of the Board of Immigration Appeals (Board) dismissing their appeal from a decision by an immigration judge denying suspension of deportation under 8 U.S.C. § 1254(a)(1).[1] We affirm.

## I. Factual Background

Petitioners are natives and citizens of Mexico. They entered the United States without inspection in 1970. They have eleven children, nine of whom live with them in Whittier, California. One of the children has gained permanent resident status since

deportation proceedings were initiated against petitioners in 1978. The wife has one brother who is a permanent United States resident. The rest of their families are in Mexico.

Ernesto works as a packer, earning approximately $250 per week. Teodora earns $30 to $80 per week as a seamstress, and two of the children contribute to the support of the family, including one son, now 31, who earns about $200 per week. Petitioners are buying a home, for which they paid $26,000. Ernesto indicated that if he had to sell his home he would get more for it than he paid.

Ernesto has group medical insurance through his union which would be lost if he were sent back to Mexico. He was an agricultural worker before coming to the United States. Since he has no education, he expects that the only work he could get in Mexico would be farm labor. He has several children who attend public school, and he states that he is too poor to pay for any education beyond the primary level in Mexico.

When deportation proceedings were instituted in 1978 petitioners conceded deportability, but applied for suspension of deportation under Section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254. The immigration judge found that petitioners met the seven years physical presence and good moral character requirements of the statute, but found them ineligible for suspension because they had not established that deportation would result in extreme hardship. The immigration judge noted that he could consider hardship only to the petitioners themselves, since they had no children or parents who were citizens or permanent United States residents at the time. He stated that the hardship to petitioners would be primarily economic, thus

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. § 1254(a)(1) grants the Attorney General discretion to suspend an alien's deportation and adjust his status to that of a lawfully admitted permanent resident if the alien is deportable, has been in the United States continuously for seven years, is of good moral character, and "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

insufficient to constitute the extreme hardship contemplated by § 1254. The Board agreed and dismissed petitioners' appeal.

The sole question on this appeal is whether the Board abused its discretion in upholding the finding of the immigration judge that petitioners were ineligible for suspension of deportation because they had failed to establish extreme hardship. This court recently considered the extreme hardship provision of § 1254(a)(1) in two *en banc* cases, *Wang v. I&NS*, 622 F.2d 1341 (9 Cir. 1980), and *Villena v. I&NS*, 622 F.2d 1352 (9 Cir. 1980). We shall consider petitioners' contentions in the light of these cases.

## II. *Scope of Review*

 Extreme hardship is by the express terms of the statute a discretionary determination. It is therefore reviewable by this court only for abuse of discretion. *Villena, supra* at 1357; *Banks v. I&NS*, 594 F.2d 760, 762 (9 Cir. 1979). However, given the ameliorative purpose of the statute, see *Wang, supra* at 1346; *Chan v. I&NS*, 610 F.2d 651, 654 (9 Cir. 1979), we must ascertain that the immigration judge and Board considered all relevant factors in their exercise of discretion.[2] A review of the record in this case shows that the Board and immigration judge considered all of petitioner's contentions, and we find no abuse of discretion.

## III. *Extreme Hardship*

 Since none of petitioners' children were citizens or permanent residents of the United States,[3] the immigration judge and Board properly limited their consideration to whether petitioners themselves would suffer extreme hardships through deportation. Petitioners present five factors which they contend support a finding of extreme hardship: difficulty in finding employment in Mexico, leaving this country after the "family has been firmly rooted in the United States for nine years", lack of finances to educate their children in Mexico, loss of medical insurance, and sale of their home. All of these factors were considered by the immigration judge and Board.

 The immigration judge and Board recognized that petitioners would suffer some hardship in finding employment in Mexico and in the loss of their group medical insurance, but found that these factors did not reach "extreme hardship" as required by the statute. These hardships merely reflected differences in economic conditions in Mexico and the United States; and although economic hardship must be considered, cases of this court have consistently held that economic hardship does not justify relief[4] in the absence of substantial additional equities. See *Wang, supra* at 1348; *Villena, supra* at 1358; *Choe v. I&NS*, 597 F.2d 168, 170 (9 Cir. 1979); *Chan, supra* at 655; *Urbano de Malaluan v. I&NS*, 577 F.2d 589, 594 (9 Cir. 1978). It is true that elements of personal hardship accompany depressed economic conditions, but we

---

2. In *Barrera-Leyva v. I&NS*, decided September 15, 1980, we held that the Board and the immigration judge abused their discretion in failing to consider non-economic factors relevant to the hardship determination, including the effect of severance of close family ties in the United States and personal hardship to infant United States citizens flowing from severe economic detriment. See also *Villena, supra* at 1359–60; *Wang, supra* at 1348; *Chan v. I&NS, supra,* 610 F.2d at 654.

3. Since the time of their hearings, one of petitioners' children gained resident status. Although consideration of hardship to that child is now appropriate, because the child's new status is a "post-deportation equity" it is entitled to less weight than it would otherwise demand. See *Wang, supra* at 1346. Consider-

ation of hardship to the resident child will be discussed below.

4. Dicta in *Kasravi v. I&NS*, 400 F.2d 675, 676 (9 Cir. 1968) suggests that the inability to find *any* employment may constitute more than mere economic detriment. It is not clear from the record in this case that petitioners would be unable to find any employment. They testified only that finding a job would be very difficult, and that any jobs they could get would not pay well. We note that we are not faced with the situation found in *Barrera-Leyva*, see n. 2 *supra.* Seven of petitioners' children are adults, and another is approaching adulthood. Some of the children have been working and contributing to the support of the family.

cannot say it was an abuse of discretion to determine that these hardships do not amount to extreme hardship.

Both the immigration judge and the Board likewise took notice that petitioners would suffer some measure of hardship on vacating and selling their home, but determined that this would not constitute "extreme hardship." With respect to petitioners' roots in this country, most of their close relatives live in Mexico, petitioners speak primarily Spanish, and they have presented no evidence of involvement in community affairs, see *Villena, supra,* at 1357, or other evidence of integration into American culture. We agree with the Board that the adjustment required of an alien returning to his native country is not sufficient hardship to warrant the extraordinary relief of suspension of deportation. See *Wang, supra,* at 1346.

Since the immigration judge and the Board have considered all of the factors upon which petitioners rely, we cannot substitute our judgment for theirs and say that the "effects of deportation [on petitioners] [would] constitute such extreme hardship that it was an abuse of discretion to deny suspension of deportation." *Villena, supra* at 1358. See also *Kasravi, supra* at 677.

As stated above, n.3, since the deportation hearings one of petitioners' children has lawfully immigrated to the United States. We noted above that since this development occurred after petitioners were under deportation orders, it was not entitled to great weight. *Wang, supra* at 1346. See also *Lee v. I&NS,* 550 F.2d 554, 556 (9 Cir. 1977). Further, the record does not show which child has become a United States resident, but presumably it is one of the adult children. This change in petitioners' circumstances is not of such moment to require reconsideration by the I&NS of petitioners' claim of extreme hardship. Although petitioners present a sympathetic case, they are no worse off than most illegal aliens who manage to prolong their stay in this country longer than seven years. The I&NS is responsible for enforcing immigration policy. We find it did not abuse its discretion in denying petitioners' applications for suspension of deportation.

The decision of the Board is affirmed.