Jorge SANTANA–FIGUEROA, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 79–7691.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1980.

Decided May 11, 1981.

As Corrected May 19, 1981.

Rehearing Denied Aug. 10, 1981.

Dennis W. Campbell, Los Angeles, Cal., for petitioner.

Katherine V. Tooks, Los Angeles, Cal., for respondent.

Before WRIGHT and TANG, Circuit Judges, and HANSON, Senior District Judge.[*]

EUGENE A. WRIGHT, Circuit Judge:

A 70 year-old citizen of Mexico has resided in the United States nearly 14 years as a responsible, law-abiding, taxpaying, church-going member of his community. Unedu-cated and unskilled, he has been employed as a maintenance man and has used his meager earnings to support both his family in Mexico and himself without public assistance. He concedes deportability but asserts that deportation would cause him extreme hardship, not only severing his ties to the community but also rendering him unable to find any employment.

An immigration judge found the petitioner ineligible for discretionary relief, not because he had failed to show any hardship but because "[h]is hardship is bottomed primarily on economic factors."[1] Employing similar reasoning, a divided Board of Immigration Appeals dismissed the petitioner's appeal.

## I. Principles of Review

Congress has given the Attorney General discretion to suspend deportation of certain deportable aliens to prevent "extreme hardship." 8 U.S.C. § 1254(a)(1)[2] "These words are not self-explanatory, and . . . the Act commits their definition in the first instance to the Attorney General and his delegates . . . ." *INS v. Wang*, —— U.S. —— at ——, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam).[3]

Our task is to review the Board's exercise of discretion. *Foti v. INS*, 375 U.S. 217, 221, 84 S.Ct. 306, 309, 11 L.Ed.2d 281 (1963); *Bastidas v. INS*, 609 F.2d 101, 104 (3d Cir. 1979); *Asimakopoulos v. INS*, 445 F.2d 1362, 1365 (9th Cir. 1971). The Board may construe "extreme hardship" narrowly, *Wang*, —— U.S. at ——, 101 S.Ct. at 1031, but the exercise of discretion must not be "arbitrary, irrational or contrary to law." *Chung v. INS*, 602 F.2d 608, 612 (3d Cir. 1979).[4]

---

[*] Of the Northern and Southern Districts of Iowa.

1. At the time of the initial decision, the petitioner was 67 years old and had been in the United States 11 years. The circumstances were not materially different.

2. To qualify for relief, the alien must establish continuous physical presence in the United States for seven years, good moral character, and extreme hardship to himself or to a spouse, parent, or child who is a citizen or permanent resident of the United States. 8 U.S.C. § 1254(a)(1).

3. *Wang*, unlike this case, involved a motion to reopen after deportation had been ordered. The Board had already "considered the facts alleged and found" no hardship. —— U.S. at ——, 101 S.Ct. at 1031.

4. *See also Chokloikaew v. INS*, 601 F.2d 216, 218 (5th Cir. 1979) (exercise of discretion must not be "arbitrary or capricious") (quoting *Paul v. INS*, 521 F.2d 194, 197 (5th Cir. 1975)).

■ Because hardship depends on specific circumstances, *Banks v. INS*, 594 F.2d 760, 762 (9th Cir. 1979), discretion can be properly exercised only if the circumstances are actually considered. When important aspects of the individual claim are distorted or disregarded, denial of relief is arbitrary.[5] Without prescribing any final result, we must remand such cases for proper consideration.

## II. Asserted Hardship to the Petitioner

### A. Economic Sources of Hardship

■ The petitioner asserted inability to find any employment in Mexico. The record shows that he is 70 years old, unskilled, uneducated, and previously injured. His testimony that there is high unemployment in Mexico was not disputed.

Neither the immigration judge nor the Board made any specific finding on the petitioner's asserted inability to find employment. The immigration judge distorted the assertion, attributing to the petitioner the contention that returning to Mexico would only make it "very difficult to get work." This is not what the petitioner said. He said that he could not get work.[6]

The Board acknowledged that the petitioner asserted "complete inability to obtain employment should he be required to depart from the United States," but concluded that this was mere "economic detriment," which it held could not satisfy the requirement of extreme hardship. It found unsupported the petitioner's belief that his leg injury would preclude employment, but disregarded the possibility that his advanced age,

lack of skill, and lack of education, together with the high unemployment rate in Mexico, would render him unemployable.[7]

■ Although economic detriment, without more, does not amount to extreme hardship, the Board mischaracterized the petitioner's potential fate. There is a qualitative difference between "mere economic detriment" and complete inability to find employment.

■ To be sure, loss of an investment by an affluent alien is nothing more than economic detriment. *INS v. Wang*, —— U.S. at ——, 101 S.Ct. at 1031. *See also Lee v. INS*, 550 F.2d 554, 556 (9th Cir. 1977) ("[f]inancial loss is not synonymous with extreme hardship"). Difficulty in finding employment or inability to find employment in one's trade or profession is also mere detriment, relevant to a claim of hardship but not sufficient to require relief. *See, e. g., Carnalla-Munoz v. INS*, 627 F.2d 1004, 1006 n.4 (9th Cir. 1980); *Kasravi v. INS*, 400 F.2d 675, 767 (9th Cir. 1968).

In *Carnalla-Munoz*, however, the petitioners "testified only that finding a job would be very difficult, and that any jobs they could get would not pay well." 627 F.2d at 1006 n.4. In *Kasravi*, the alien's inability to work in the film industry was "economic disadvantage." 400 F.2d at 676. We expressly noted that it was "not claimed that the petitioner would be unable to find any employment." *Id.* Deprivation of the means to live is far more than an "economic" loss. *See also Soric v. Flagg*, 303 F.2d 289, 290 (7th Cir. 1962) ("economic sanctions so severe as to deprive a person of all means

---

5. The Board abuses its discretion if it is unduly influenced by "factors that are not germane to the eligibility requirements set out in the Act," *Chung v. INS*, 602 F.2d 608, 612 (3d Cir. 1979), or fails to consider important facts that are germane to the statutory purpose. *Tovar v. INS*, 612 F.2d 794, 797 (3d Cir. 1980). *See also Bastidas v. INS*, 609 F.2d 101, 104 (3d Cir. 1979) (special inquiry officer failed to consider noneconomic hardship).

6. Following is the relevant exchange:
   Q. If you had to return to Mexico, do you think you'd be able to find work there?

A. No. I would suffer quite a bit if I was returned to Mexico.
   Later, the petitioner commented, "after you reach the age of 40 it's very difficult to get a job [in Mexico]." This comment is entirely consistent with the contention that the petitioner, then 67, could not get any job.

7. There is support in the record for this contention, although the board may examine the evidence in more depth on remand. The record also appears to support the inference that the petitioner could not rely on the support of his family in Mexico, which has had to rely on support from the petitioner.

of earning a livelihood may amount to physical persecution"). *Cf. INS v. Wang,* —— U.S. at ——, 101 S.Ct. at 1031 (there was "nothing to suggest that Mr. Wang could not find suitable employment in Korea").

■ In a country with widespread poverty, complete inability to find work can have exceptionally severe personal and noneconomic consequences. For an aged person with no means of support but his own labor, the consequences may include untreated illness, malnutrition, or starvation. These bleak prospects cannot rationally be said to fall short of extreme hardship in all cases simply because they are traceable to "economic" causes. To characterize this alien's potential suffering as "mere detriment" because of its economic origin, thereby foreclosing relief regardless of individual need or merit, appears arbitrary and irrational.

After considering the circumstances, the Board may find no hardship or deny discretionary relief. But the arbitrary failure to give proper consideration to the core of the petitioner's claim is an abuse of discretion requiring us to reverse and remand the Board's decision.

### B. *Noneconomic Sources of Hardship*

■ Even if the petitioner had established only that he would incur economic detriment, the Board should have considered this detriment together with hardship from noneconomic sources. Although it acknowledged that economic detriment is a factor to be considered, it gave no indication of having actually considered other sources of hardship to the petitioner. *Cf. INS v. Wang,* —— U.S. at ——, 101 S.Ct. at 1031 (Board had "considered the facts alleged and found" no hardship).

The record shows that the petitioner regularly attended church for at least ten years, had close friends here, and testified that he felt he had become part of American society. His priest wrote that he had been "an asset to our church and community." The Board should not have disregarded the possibility that extreme hardship would result from the combined effect of depriving the petitioner of his livelihood and uprooting him from a community to which he had belonged and contributed for more than a decade. *See Bastidas·v. INS,* 609 F.2d at 105.

### III. *Proper Considerations*

■ No alien has an absolute right to suspension of deportation under § 1254(a)(1), and an alien seeking relief must have more to offer than a bare allegation.[8] But when allegations are specific and supported by evidentiary material, and the Board denies eligibility for relief, it must give reasons for its decisions showing that it has properly considered the circumstances. *See, e. g., Bastidas v. INS,* 609 F.2d at 105; *Chung v. INS,* 602 F.2d at 612.[9] To affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion.

It has long been recognized that "deportation may result in the loss of 'all that makes life worth living.'" *Bridges v. Wixon,* 326 U.S. 135, 147, 65 S.Ct. 1443, 1449, 89 L.Ed. 2103 (1945) (quoting *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 495,

---

**8.** Here, the evidence of hardship from inability to find any employment includes the petitioner's age, lack of skill, lack of education, and testimony about conditions in Mexico, as well as his alleged infirmity, which received cursory consideration at best. In addition, inferences concerning the lack of alternative means of support, and the consequences for the petitioner, may be drawn from the evidence. *See* note 7, *supra.*

It may be that younger, able-bodied aliens would need to present other evidence, but the petitioner's allegations clearly warrant consideration.

**9.** Summary dismissal of appeals is authorized by 8 C.F.R. § 3.1(d)(1–a), but only in very limited circumstances not relevant here. When an alien appeals from an adverse decision on a point he has not conceded, and the appeal is not "frivolous and filed solely for purpose of delay," *id.,* summary dismissal is inappropriate and full consideration should be given.

66 L.Ed. 938 (1922)). Economic loss often accompanies deportation. Even a significant reduction in standard of living is not, by itself, a basis for relief. *See De Reynoso v. INS*, 627 F.2d 958, 959 (9th Cir. 1980).

But deportation may also result in the loss of all that makes life possible. When an alien would be deprived of the means to survive, or condemned to exist in life-threatening squalor, the "economic" character of the hardship makes it no less severe. The alien must face this fact, and so should the Board.

REVERSED and REMANDED.