78 F.3d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rogelio and Aurora TABIGNE, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70531.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1995.*
Decided Feb. 22, 1996.
 
 1
 Before: D.W. NELSON, and JOHN T. NOONAN, JR., Circuit Judges, and TANNER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 I. BACKGROUND
 
 3
 Rogelio and Aurora Tabigne (the "Tabignes"), natives and citizens of the Philippines, petition for review of the decision of the Board of Immigration Appeals ("BIA"). The BIA summarily dismissed their appeal of an immigration judge's ("IJ") order denying their application for suspension of deportation under § 244(a), 8 U.S.C. § 1254(a).
 
 
 4
 The case arises from the admitted misrepresentations to the INS made by Rogelio and Aurora Tabigne, when seeking entry into the United States as permanent residents in 1975 and 1980 respectively. In 1987 Aurora applied for U.S. citizenship, claiming that she had three children living in the Philippines. Because an investigation revealed that this conflicted with information she had given in 1980, the Immigration and Naturalization Service ("INS") instituted this deportation action against Rogelio and Aurora on the ground that they had both unlawfully entered the U.S.
 
 
 5
 The Tabignes initially sought, in the alternative, suspension of deportation, waiver of deportation, adjustment of status, and voluntary departure. Prior to their hearing before the IJ, the Tabignes agreed through their attorney to drop the waiver of deportation and adjustment of status claims. The IJ denied their application for suspension of deportation but granted them voluntary departure. The Tabignes appealed this denial to the Board of Immigration Appeals ("BIA"), which determined that the Tabignes failed to satisfy the showing of extreme hardship, upheld the suspension of deportation, and dismissed the appeal. On appeal to this court, the Tabignes argue that the BIA abused its discretion in denying their applications for suspension of deportation in failing to find extreme hardship, and that they were denied effective assistance of counsel before both the IJ and the BIA.
 
 II. ANALYSIS
 
 6
 A. WHETHER DEPORTATION WILL RESULT IN EXTREME HARDSHIP
 
 
 7
 This court reviews a decision by the BIA to deny an application for the suspension of deportation for lack of extreme hardship for an abuse of discretion. In exercising its discretion, the BIA is permitted to construe "extreme hardship" narrowly, but must consider all pertinent factors regarding extreme hardship and articulate the reasons for denying suspension of deportation. Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995); INS v. Wang, 450 U.S. 139, 145 (1981).
 
 
 8
 The Attorney General in her discretion may suspend deportation and adjust the status of an otherwise deportable alien who (1) has been physically present in the United States for not less than seven years; (2) is a person of good moral character; and (3) is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. Section 244 of the INA, 8 U.S.C. § 1254(a)(1). The Tabignes bear the burden of demonstrating both statutory eligibility and that they merit a favorable exercise of discretion. Ramirez-Durazo v. I.N.S., 794 F.2d 491, 497 (9th Cir.1986). Extreme hardship will not be found absent a showing of significant actual or potential injury. Hassan v. INS, 927 F.2d 465 (9th Cir.1991).
 
 
 9
 Rogelio and Aurora assert that if deported they would not only be unable to find work of the same calibre as their cannery jobs, but that they would also be unable to find much of any work. Rogelio testified that before emigrating from the Philippines, he worked infrequently as a motorcycle taxi driver. He also testified that he and his wife were sending a significant amount of their income back to the Philippines for their three adult children's schooling.
 
 
 10
 Financial hardship alone cannot constitute extreme hardship. Ramirez-Duranzo v. INS, 794 F.2d 491, 498 (9th Cir.1991). The Tabignes' testimony and unsupported allegations regarding a lack of jobs to which they can transfer their skills are insufficient to establish their inability to find employment if returned to the Philippines. The Tabignes failed to show that they would suffer the severe economic detriment needed to trigger a finding of extreme hardship. Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1211-12 (9th Cir.1983).
 
 
 11
 Nor can the Tabignes make out a claim of severe economic detriment under the requirements set forth in Santana-Figueroa v. INS, 644 F.2d 1354, 1356-57 (9th Cir.1980). First, unlike in Santana-Figueroa, the BIA here made specific findings regarding the Tabignes' asserted inability to find employment. Id. at 1356. Second, as Santana-Figueroa has held, the inability of the Tabignes to find cannery work would constitute "mere detriment ... not sufficient to require relief." Id. Third, the inability of the Tabignes to find a job which would pay well would not constitute an adequately severe detriment. Id., citing Carnalla-Munoz v. INS, 627 F.2d 1004, 1006 n. 4 (9th Cir.1980).
 
 
 12
 Finally, the Tabignes have not shown that return to the Philippines would leave them "with no means of support but [their] own labor," leading to "untreated illness, malnutrition, or starvation." Id. at 1357. First, evidence tends to show that the Tabignes' children who live in the Philippines are finished with their schooling and should be able to support their parents. Second, there is also evidence that, before emigrating to the U.S., Rogelio worked as a farmer, contributing to the family farming enterprise. Finally, Rogelio has not convincingly shown that he has no savings; the IJ aptly noted that Rogelio did not adequately account for the Tabignes' cashflow, nor did he offer sufficient support for the claim that the couple has accumulated no assets due to sending most of their income to support their three children in the Philippines.
 
 
 13
 The Tabignes make a broader argument for extreme hardship based on the general economic and political conditions in the Philippines. However, deportation to a country with depressed economic conditions will not constitute extreme hardship. Carnalla-Munoz, 627 F.2d at 1006. Further, the Tabignes did not raise a claim of extreme hardship resulting from political conditions in the Philippines before the BIA, thus this claim is not properly before this court. Liu v. Waters, 55 F.3d 421, 426 (9th Cir.1995).
 
 
 14
 Finally, the Tabignes allege that they suffer from medical conditions which warrant a finding that deportation to the Philippines would cause them extreme hardship. Rogelio testified that he and Aurora became sick after drinking the water on at least one of their trips to the Philippines, but he also admitted that they could have avoided illness by boiling the water first. Moreover, the Tabignes clearly did not suffer any permanent health problems on any of these visits.
 
 
 15
 Rogelio also testified to suffering from "a little bit" of high blood pressure. However, he provided no clinical evidence of this condition, made no showing of either the severity of this condition or that he was currently being treated in the United States for this condition, and failed to demonstrate that this condition could not be adequately treated in the Philippines. Further, Rogelio's assertion that he would lose his medical insurance upon return to the Philippines is not determinative. The BIA properly found that neither of these allegations was sufficient to establish a case of extreme hardship. See Patel v. INS, 741 F.2d 1134, 1137-38 (9th Cir.1984).
 
 
 16
 The Tabignes also claim that their deportation would result in extreme hardship to Rogelio's father Luis and to their birth son Roderick. While the severance of family ties is a relevant factor to consider in determining hardship, the Tabignes have not provided any evidence that either they or Luis would experience any particular hardship were they to be deported. Luis is not financially dependent on the Tabignes, nor have the Tabignes visited Luis in almost fifteen years.
 
 
 17
 Although Roderick Tabgine has lived with and been supported by Rogelio and Aurora since 1985, because of Roderick's earlier adoption by his grandfather Luis, the Tabignes are not eligible to make a claim of extreme hardship based on the effect of their deportation on him. 8 U.S.C. § 1101(b)(1); INS v. Hector, 479 U.S. 85, 90-91 (1986) (refusing to adopt a "functional definition" of the term "child" as it is used in § 1101(b)(1)). Nevertheless, the BIA did consider the hardship on the Tabignes of separation from Roderick. See Zamora-Garcia v. INS, 737 F.2d 488 (5th Cir.1984). The BIA found that the ability of Roderick to visit the Tabignes in the Philippines, and they him in the U.S., negated any claim of extreme hardship based on the Tabignes' separation from him.
 
 
 18
 B. WHETHER CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL MAY BE RAISED FOR THE FIRST TIME ON APPEAL
 
 
 19
 The Tabignes, represented by new counsel, allege for the first time here the ineffectiveness of counsel representing them before both the IJ and the BIA. They contend that incompetent counsel caused them to fail to seek an adjustment of status or a waiver of deportation, for which they might have been eligible and which would have been easier to obtain than a suspension of deportation, that previous counsel should have appealed to the BIA the alleged error of the IJ in viewing Rogelio as untruthful, and that these errors constitute a violation of their due process rights.
 
 
 20
 In Liu v. Waters, 55 F.3d 421 (9th Cir.1995), the court refused to address the issue of incompetent counsel raised for the first time on appeal, inasmuch as this is the type of procedural error which the BIA has jurisdiction to correct. Thus, the Liu court found that the petitioner had not exhausted his administrative remedies before the BIA. The court reached its holding notwithstanding the petitioner's formulaic argument that ineffectiveness of counsel raised a constitutional question, over which the BIA generally lacks jurisdiction, calling such an argument "faux logic." Id. at 425; see Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir.1994). Thus, the Tabignes are required to make a motion to reopen their case before the BIA, citing ineffective assistance of counsel as the reason for failing to raise claims before the IJ or the BIA, rather than raise the incompetency issue here for the first time. Liu at 426.
 
 III. CONCLUSION
 
 21
 In returning to the Philippines, the Tabignes will simply suffer the common results of deportation, which are insufficient to prove extreme hardship. Hassan, 927 F.2d at 468. Therefore, we deny the petition for review, affirm the decision of the BIA that the Tabignes have failed to demonstrate extreme hardship warranting a suspension of deportation, and affirm the order of the BIA permitting voluntary departure.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unaminously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3