86 F.3d 1161
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Adolfo BRENES-BARBARENA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70853.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1995.*
Decided May 17, 1996.
 
 1
 Before: BROWNING and NOONAN, Circuit Judges and MEHRIGE**, District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Adolfo Brenes-Barbarena appeals from the November 1994 decision of the Board of Immigration Appeals which affirmed the March 1991 decision of an Immigration Judge (IJ) denying Brenes' application for suspension of deportation and granting Brenes voluntary departure to Nicaragua. We AFFIRM the Board of Immigration Appeals.
 
 FACTS
 
 4
 Brenes is a Nicaraguan citizen who entered the United States in 1984 illegally and without inspection. At the time of the hearing before the Board Brenes was single, in good health, had no children, had never received welfare, had never been arrested and had a steady job as a construction worker. The record reflects no change in his circumstances since the hearing and lists an October 1958 birth date, which places his current age at 37.
 
 
 5
 Since his entry in 1984 Brenes has not left the United States. He is an active and valued member of Saint Anthony's Catholic Church in San Francisco. Father Arturo Mendez, the assistant pastor at Saint Anthony's, testified that the church community is Brenes' "main family" and that Brenes volunteers over 20 hours a week in church programs. Brenes testified that these programs included teaching school children, administering a church program for the homeless and delivering meals to persons with AIDS. Brenes also testified that he hopes to begin studies in the United States to enter the priesthood, but the record does not reflect that he has done more than talk about his plans to become a priest.
 
 
 6
 Brenes has paid taxes every year since his entry. He falsely claimed deductions for a varying number of dependents on his returns for tax years 1985-1989. The record contains no evidence that Brenes has filed corrected returns although he told the IJ he would do so.
 
 
 7
 Brenes has three brothers living in the San Francisco Bay area whom he sees occasionally. He testified that he would miss his brothers were he to leave the United States. Brenes' parents and sisters still live in Nicaragua. Brenes manages to send $100 per month home on an irregular basis.
 
 
 8
 In 1989 Brenes was charged with entering the United States without inspection. At a December 1989 hearing before an IJ Brenes, represented by counsel, conceded his deportability. Brenes initially requested asylum and withholding of deportation or in the alternative voluntary departure. In 1990 Brenes withdrew this request and submitted an application for suspension of deportation.
 
 STANDARD OF REVIEW
 
 9
 When the Board has exercised its power to conduct a de novo review of the IJ's decision, this court reviews only the decision of the Board. Paredes-Urrestarazu v. INS, 36 F.3d 801, 807 (9th Cir.1994). The Board's de novo review renders harmless any errors made by the IJ. Yepes-Prado, 10 F.3d 1363, 1366-67 (9th Cir.1993). The Board's description of its review of Brenes' case shows that the review was in effect de novo: "We have reviewed the record of the proceedings, the immigration judge's decision, and the respondent's contentions on appeal."
 
 
 10
 This court reviews questions of law de novo and reviews the Board's factual conclusions under the substantial evidence standard. The Board must state its reasons for its decision and demonstrate that it considered all appropriate factors. Paredes-Urrestarazu, 36 F.3d at 807. The Board's factual finding of statutory ineligibility is reviewed for substantial evidence. Braun v. INS, 992 F.2d 1016, 1018 (9th Cir.1993). We review the BIA's finding of no "extreme hardship" for an abuse of discretion. Ramirez-Durazo v. INS, 794 F.2d 491, 498 (9th Cir.1986).
 
 DISCUSSION
 
 11
 Section 244(a) of the Immigration and Nationalization Act, codified at 8 U.S.C. § 1254(a), gives the Attorney General the discretion to suspend deportation proceedings of an otherwise deportable alien "who (1) has been physically present in the United States for not less than seven years; (2) is a person of good moral character; and (3) is 'a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.' " INS v. Jong Ha Wang, 450 U.S. 139, 139-140 (per curiam) (denying cert.), reh. denied, 451 U.S. 964 (1981). See also Ramirez-Durazo, 794 F.2d at 497.
 
 
 12
 Only the third requirement of showing extreme hardship is at issue here. "Extreme hardship" may be construed narrowly. Wang, 450 U.S. at 139-140, Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995). The Board has the discretion to construe "extreme hardship" narrowly as long as it considers all factors relevant to the hardship determination and states its reasons for denying the requested relief. Ramirez-Durazo, 794 F.2d at 498. Brenes claims that deportation will cause him extreme hardship in two ways: by separation from community and siblings, and by economic hardship.
 
 
 13
 Brenes claims that he would miss his brothers, and that being separated from his church community would constitute extreme hardship. Section 244(a) contemplates relief only when hardship is inflicted on an alien's spouse or children, not his siblings. As to community ties, this court has indicated that severance of ties "occurs every time a person relocates" and that such severance does not constitute extreme hardship. Patel v. INS, 638 F.2d 1199, 1206 (9th Cir.1980). The claim of emotional hardship is not conclusive of extreme hardship. Hassan v. INS, 927 F.2d 465, 468 (9th Cir.1991).
 
 
 14
 This court has concluded that separation from community can combine with economic hardship to amount to extreme hardship. In Santana-Figueroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981) this court observed that "the combined effect of depriving the petitioner of his livelihood and uprooting him from a community to which he had belonged and contributed for more than a decade" could amount to extreme hardship.
 
 
 15
 Brenes' case presents a much different combination of economic and community factors than that of Santana-Figueroa. Santana-Figueroa was an uneducated, unskilled 70-year old Mexican citizen who had resided almost 14 years in the United States "as a responsible, law-abiding, taxpaying, churchgoing member of his community." Id. at 1355. He felt he had become part of American society. Id. at 1357. The court found that deportation would cause him extreme hardship by severing his ties to the community and rendering him unable to find any employment. This court indicated that economic hardship could qualify as extreme hardship under § 244 "[w]hen an alien would be deprived of the means to survive, or condemned to exist in life-threatening squalor." 644 F.2d at 1358. Brenes presented no evidence that he will face such deprivation.
 
 
 16
 Brenes' claim of economic hardship amounts to a concern that he will not be able to find work in Nicaragua and that in Nicaragua he would not be able to study to become a priest. Brenes does not support these contentions with anything more than information from his family in Nicaragua that the economic situation there is terrible, inflation is high and that no work is to be had. However, Brenes has marketable skills as a construction worker and has completed two and a half years of university study in Nicaragua. His father, who had to close his welding shop after the Sandinistas came to power, is now employed by the new government.
 
 
 17
 Economic hardship consists of much more than concern over reduced job opportunities in the country of deportation. Ramirez-Durazo, 794 F.2d at 498. The Santana-Figueroa court noted the qualitative difference between mere economic detriment and a complete inability to find employment. 644 F.2d at 1356. Unlike Santana-Figueroa, Brenes is young, healthy and skilled. Brenes has not shown a complete inability to find work upon his return to Nicaragua.
 
 CONCLUSION
 
 18
 The Board stated the reasons for its decision and demonstrated that it considered all factors relevant to Brenes' request for suspension of deportation, including economic detriment and other sources of hardship. Santana-Figueroa, 644 F.2d at 1357. Those other sources of hardship included severance of family and community ties. Considering all sources of hardship to Brenes, we conclude that the Board did not abuse its discretion in concluding that deportation would not cause extreme hardship for Brenes.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3