116 F.3d 1485
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Pablo JIMENEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70169.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 18, 1997.
Decided June 25, 1997.
 
 1
 Petition for Review of a Decision of the Board of Immigration Appeals, No. Akt-erd-tij.
 
 
 2
 Before: D.W. NELSON and FERNANDEZ, Circuit Judges, and REA,* District Judge.
 
 
 3
 MEMORANDUM**
 
 
 4
 Petitioner Pablo Jimenez, a native of Mexico, seeks review of a decision of the Board of Immigration Appeals ("BIA") upholding the Immigration Judge's denial of his request for suspension of deportation. Petitioner brought this action pursuant to 8 U.S.C. § 1254(a)(1), alleging that the BIA abused its discretion by failing to adequately consider petitioner's claims that his deportation would result in extreme hardship either to himself or to his United States citizen son. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a)(1), and we deny the petition.
 
 
 5
 We review BIA determinations regarding "extreme hardship" in suspension of deportation proceedings under an abuse of discretion standard. See, e.g., Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995); Hassan v. INS, 927 F.2d 465, 467 (9th Cir.1991).
 
 
 6
 Although the BIA has "the authority to construe 'extreme hardship' narrowly," see INS v. Wang, 450 U.S. 139, 145 (1981) (per curiam), we have "consistently required the BIA to state its reasons and show proper consideration of all factors when weighing equities and denying relief." See Mattis v. INS, 774 F.2d 965, 968 (9th Cir.1985). Thus, "failure by the BIA to consider all pertinent facts regarding extreme hardship, or failure to articulate the reasons for denying suspension of deportation, is an abuse of discretion." Tukhowinich, 64 F.3d at 463.
 
 
 7
 Extreme hardship is not present unless a petitioner demonstrates "significant actual or potential injury." See Hassan, 927 F.2d at 468. Moreover, "The common results of deportation or exclusion are insufficient to prove extreme hardship." Id.; see also, Ramirez-Durazo v. INS, 794 F.2d 491, 499 (9th Cir.1986).
 
 
 8
 Petitioner argues that the BIA abused its discretion in the instant case by failing to adequately consider the following relevant factors in making its extreme hardship determination: (1) petitioner's inability to find employment in his native country of Mexico; (2) the non-economic and personal hardships petitioner would suffer as a result of this economic detriment; (3) the severe emotional hardship on petitioner by virtue of his separation from his five siblings who are lawful permanent residents of the U.S.; (4) the personal hardship that petitioner's citizen son would suffer whether he remains in the United States or goes with his father to Mexico; and (5) the psychological hardship petitioner would suffer by being taken away from his community of ten years. Petitioner also argues that the BIA abused its discretion by failing to consider the aggregate effect of these potential individual hardship factors.
 
 
 9
 A. Petitioner's Alleged Inability to Find Work in Mexico
 
 
 10
 We have consistently held that "[e]conomic disadvantage alone does not constitute 'extreme hardship.' " Ramirez-Durazo, 794 F.2d at 498; see also Carnalla-Munoz v. INS, 627 F.2d 1004, 1006 (9th Cir.1980); Villena v. INS, 622 F.2d 1352, 1358 (9th Cir.1980). Indeed, we have held that, "The reduced job opportunities and lower standard of living that the petitioners will face upon deportation to Mexico do not rise to the level of 'extreme hardship." ' Ramirez-Durazo, 794 F.2d at 498. Thus, we reject petitioner's claim that he established extreme hardship by introducing evidence indicating that he would suffer economic detriment if deported to Mexico and that he would not be able to support his family in Mexico as well as he presently can in the United States.
 
 
 11
 In addressing petitioner's claim that he would be unable to find work in Mexico, the BIA stated that, "Inability to find employment is insufficient to establish extreme hardship." The BIA cited Carnalla-Munoz, 627 F.2d at 1006 for this proposition. However, neither Carnalla-Munoz nor any other Ninth Circuit opinion supports the BIA's position. Quite to the contrary, we have held that while difficulty in finding employment or an inability to obtain a particular job are simply ordinary economic detriments that are insufficient to constitute extreme hardship, a complete inability to obtain any employment whatsoever may be enough to establish the requisite extreme hardship. See Santana-Figueroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981) (holding that the hardships resulting from a complete inability to find work "cannot rationally be said to fall short of extreme hardship in all cases simply because they are traceable to 'economic' causes.").
 
 
 12
 The BIA did not abuse its discretion, however, as despite the BIA's misstatement of the law, the BIA actually went on to consider petitioner's claim of extreme hardship based on his alleged inability to find any work in Mexico. Specifically, the BIA commented that, "We further note that he is a 30-year-old, healthy, industrious, and skilled cook. The respondent found work in Mexico when he was young and inexperienced. Therefore, his chances of finding a job in Mexico have improved, given his 9 years of work experience." Accordingly, the BIA did not abuse its discretion since the BIA properly considered petitioner's individual circumstances before deciding that the factors mentioned in its decision would enable petitioner to obtain employment in Mexico.
 
 
 13
 B. Non-Economic and Personal Hardships Flowing From Petitioner's Inability to Find Comparable Employment
 
 
 14
 We have held that, "Although economic detriment, without more, does not amount to extreme hardship, the personal hardships that flow from the economic detriment may be a relevant factor for the BIA to consider in determining extreme hardship." Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1211 (9th Cir.1983); see also, Santana-Figueroa, 644 F.2d at 1356-57; Barrera-Leyva v. INS, 637 F.2d 640, 645 (9th Cir.1980).
 
 
 15
 The BIA here held that, "Where, as in this case, the respondent merely asserts inability to find employment in his native country, we need not consider the personal hardship that are [sic] claimed to flow from the alleged economic detriment." Petitioner argues that this intentional and express lack of consideration of petitioner's non-economic and personal hardships constitutes an abuse of discretion by the BIA. We disagree.
 
 
 16
 Non-economic, personal hardships are relevant factors to be considered by the BIA. See, e.g., Tukhowinich, 64 F.3d at 463 (quoting Ramirez-Gonzalez, 695 F.2d at 1211); Santana-Figueroa, 644 F.2d at 1356-57. Nonetheless, we have previously held that where an alien requesting suspension of deportation does not demonstrate a complete inability to obtain employment in his or her native country, the BIA "cannot be faulted for failing to consider the personal hardships that are claimed to flow from the alleged economic detriment." Ramirez-Gonzalez, 695 F.2d at 1212. Thus, because the BIA concluded that petitioner had failed to establish the factor of a complete inability to obtain employment that is necessary to trigger the BIA's duty to consider non-economic, personal hardships, the BIA did not abuse its discretion by expressly not considering petitioner's claimed hardship factors. See id. at 1211-12.
 
 
 17
 Petitioner argues that our decision in Tukhowinich v. INS, 64 F.3d at 463-4, mandates a contrary conclusion. Specifically, petitioner points to the statement in Tukhowinich that, "[W]e need not find that Ms. Tukhowinich would be unemployable if deported to Thailand in order to find that she would suffer severe personal and noneconomic consequences." Id. at 464 (quotation omitted). Petitioner contends that this statement establishes that the BIA must consider non-economic hardships to potential deportees even if the petitioner has not demonstrated a complete inability to obtain employment.
 
 
 18
 Petitioner is incorrect. The context in which this statement was made indicates that our decision in Tukhowinich merely establishes exceptions to the general rule that the BIA need not examine any non-economic hardship factors absent a showing of a complete inability to obtain employment. See Ramirez-Gonzalez, 695 F.2d at 1212. Specifically, if a petitioner demonstrates severe economic detriment,[1] or if a petitioner demonstrates unique non-economic and personal consequences from deportation,[2] it is an abuse of discretion for the BIA not to consider the petitioner's non-economic and personal hardship factors in making the "extreme hardship" determination.
 
 
 19
 In the instant case, the BIA found that petitioner Jimenez's "chances of finding a job in Mexico have improved" given his work experience in the United States such that petitioner would not suffer any unique or extreme economic detriment uncommon to other aliens deported back to Mexico. In addition, although petitioner has demonstrated that he will likely suffer some non-economic and personal hardships if deported,[3] we do not feel that these non-economic hardships are severe enough to trigger the BIA's duty to consider such consequences. Accordingly, even under our decision in Tukhowinich, the BIA did not abuse its discretion here by intentionally disregarding the non-economic and personal hardships petitioner would suffer if deported.
 
 C. Separation From Siblings
 
 20
 We have held that the most important single factor relative to the issue of extreme hardship may be separation from family living in the United States. See, e.g., Contreras-Buenfil v. INS, 712 F.2d 401, 403 (9th Cir.1983); Mejia-Carrillo v. INS, 656 F.2d 520, 522 (9th Cir.1981). Accordingly, the emotional and psychological hardship on petitioner that would result from the severance of his ties to his four brothers and one sister who legally reside in the United States is a relevant hardship factor that must be considered by the BIA. See, e.g., Ramirez-Durazo, 794 F.2d at 499; Ramirez-Gonzalez, 695 F.2d at 1211; Mejia-Carrillo, 656 F.2d at 522 (stating that "separation from family alone may establish extreme hardship").
 
 
 21
 We have often found, however, that it is not an abuse of discretion for the BIA to conclude that such hardship did not amount to "extreme hardship." See, e.g., Hassan, 927 F.2d at 468; Sullivan v. INS, 772 F.2d 609, 611 (9th Cir.1985). The reason separation from family members in the United States does not always constitute extreme hardship is that "deportation rarely occurs without personal distress and emotional hurt," see Sullivan, 772 F.2d at 611, and that, therefore, separation from family members is simply one of the "common results of deportation or exclusion [that] are insufficient to prove extreme hardship." Hassan, 927 F.2d at 468.
 
 
 22
 In the instant case, petitioner argues that the BIA could not have concluded that "[t]he respondent has not shown how the severance of ties in this country would be unusual or beyond that normally expected" if the BIA had properly considered his individual circumstances and how significant the emotional and psychological hardship would be for him if he were separated from his brothers and sister.
 
 
 23
 Despite petitioner's arguments, we affirm the ruling of the BIA, as it is not for us to reconsider the facts and make our own determination of whether the severance of family ties would result in extreme hardship. See, e.g., id., 927 F.2d at 468 (stating that "the application of the 'extreme hardship' requirement is committed to the [Board] and will not be overturned simply because we might prefer another interpretation of the statute.") (quotation omitted)).
 
 
 24
 D. Hardship to Petitioner's United States Citizen Son
 
 
 25
 In determining whether extreme hardship exists, the BIA is required to consider the adverse consequences flowing from the deportation of the alien--both to the alien and to his "spouse, parent, or child who is a citizen of the United States." See 8 U.S.C. § 1254(a)(1); see also, Casem v. INS, 8 F.3d 700, 703 (9th Cir.1993); Cerrillo-Perez, 809 F.2d 1419, 1424 (9th Cir.1987). Because petitioner's son is a United States citizen, the BIA had a duty to properly consider the hardship that would result to petitioner's son if petitioner were deported.
 
 
 26
 "Mere inconvenience to a citizen child is insufficient to constitute extreme hardship." See Villena, 622 F.2d at 1358. However, the hardship to a citizen child may independently be sufficient to warrant suspension of the parent's deportation. See 8 U.S.C. § 1254(a)(1); Cerrillo-Perez, 809 F.2d at 1422.
 
 
 27
 Petitioner argues that the BIA failed to consider the hardship to his son by: (1) improperly concluding that petitioner's son would not face extreme hardship if he accompanied his father to Mexico; and (2) completely disregarding the potential hardship that petitioner's son would suffer if he remained in the United States.
 
 
 28
 1. Hardship to Petitioner's Son If He Goes to Mexico
 
 
 29
 In the instant case, the BIA found that petitioner's claim that his citizen child would suffer numerous hardships if the child went to Mexico with his father was insufficient to constitute extreme hardship. Although we might not necessarily have reached the same conclusion that the BIA reached, because our sole task is to determine if the BIA abused its discretion in rejecting petitioner's claim, see, e.g., Hassan, 927 F.2d at 468, we find that the BIA did not abuse its discretion. In the first place, we have approved of the reasoning utilized by the BIA that the young age of petitioner's child will mitigate the adjustment difficulties the child may have if he goes to Mexico with petitioner. See, e.g., Patel v. INS, 638 F.2d 1199, 1206 (9th Cir.1980); Barrera-Leyva, 637 F.2d at 645.
 
 
 30
 Moreover, the BIA's determination that extreme hardship is not established here on the ground that the child may not have the same educational opportunities or the same level of health care and insurance in Mexico as he does in the United States is well-grounded in the law. See, e.a., Ramirez-Durazo, 794 F.2d at 498; Matter of Correa, 19 I & N Dec. 130, 134 (BIA 1984).
 
 
 31
 Finally, it was clearly within the BIA's discretion to conclude that the fact that petitioner's family has been speaking Spanish in the home will help ease the child's transition into Mexican society and schools. See Ramirez-Durazo, 794 F.2d at 498.
 
 
 32
 Accordingly, the BIA did not abuse its discretion in holding that petitioner failed to establish that his U.S. citizen child would suffer extreme hardship if the child went to Mexico with petitioner.
 
 
 33
 2. Hardship to Petitioner's Son If He Remains in the United States
 
 
 34
 As a United States citizen, petitioner's son has an absolute right to remain in the United States. See, e.g., Cerrillo-Perez, 809 F.2d at 1423. Given the child's young age, it is unlikely that the child will make this decision for himself. Accordingly, petitioner and his wife have an extraordinarily difficult choice--they can let their son go to Mexico or they can separate the child from his father and let the child remain in the United States. Where both alternatives are raised by an alien in the context of an application for suspension of deportation, the BIA abuses its discretion if it fails to consider the possible hardships to the citizen child under each alternative. See, e.g., id. at 1421.
 
 
 35
 Petitioner argues that the BIA abused its discretion because contrary to this clear legal principle, the BIA here refused to consider any of the hardship that might result to petitioner's son if he were to remain in the U.S. The BIA's justification for ignoring this alternative was that petitioner failed to present any concrete evidence indicating that the child would remain in the United States and that reasonable provisions would be made for him. Our recent decision in Perez v. INS, 96 F.3d 390, 393 (9th Cir.1996) squarely endorses the BIA's methodoloy.
 
 
 36
 In the instant case, exactly as in the Perez case, petitioner did not present any affidavits or other evidence stating that the citizen child would remain in the United States post-deportation or that arrangements had been made for the child in petitioner's absence. We find that petitioner's failure to meet the burden of producing evidence that the citizen child would remain in the United States gave the BIA the discretion to decline to give significant weight to petitioner's claim that his child would suffer extreme hardship if the child remained in the U.S.
 
 
 37
 E. Hardship Flowing From Severance of Ties to the Community
 
 
 38
 Although the loss of community ties is a relevant factor for the BIA to consider in making extreme hardship determinations, the BIA did not abuse its discretion by not discussing this issue in the instant case since petitioner did not raise this factor in his brief to the BIA or in the hearing before the BIA. We have consistently held that the BIA does not abuse its discretion if the BIA neglects to discuss an argument not raised before it in the suspension of deportation proceedings. See, e.g., Vargas v. INS, 831 F.2d 906, 907-08 (9th Cir.1987); Contreras-Buenfil, 712 F.2d at 404. Accordingly, we find that the BIA did not abuse its discretion by failing to consider whether petitioner would suffer extreme hardship due to the loss of ties to the community he has lived in for the last ten years.
 
 
 39
 F. Cumulative Effect of the Factors Bearing on the Issue of Extreme Hardship
 
 
 40
 The BIA's extreme hardship decision in a suspension of deportation case must be based on the cumulative effect of the hardships imposed by deportation on the individual petitioner. See, e.g., Ramirez-Durazo, 794 F.2d at 499; Prapavat v. INS, 662 F.2d 561, 562 (9th Cir.1981). Petitioner argues that the BIA abused its discretion in the instant case by not conducting such a cumulative consideration of the various hardship factors. In other words, petitioner argues that while it may be true that none of these factors is individually sufficient to constitute extreme hardship, when taken together, the aggregate effect is sufficient to constitute extreme hardship.
 
 
 41
 The only indication that we have that the BIA did consider petitioner's claimed hardships cumulatively is the BIA's statement that it "carefully considered each of the hardship factors the respondent has raised, both individually and in the aggregate." Petitioner cites Hernandez-Cordero v. INS, 783 F.2d 1266, 1269 (5th Cir.1986), for the proposition that the "mere recitation that all of the factors were considered cumulatively is not sufficient." Id.
 
 
 42
 We reject this argument. In the first place, the Hernandez-Cordero case relied upon by petitioner has been superseded upon rehearing by an en banc panel of the Fifth Circuit. See Hernandez-Cordero v. INS, 819 F.2d 558 (5th Cir.1987) (en banc ). More importantly, the BIA's decision in the instant case appears to have considered all of the relevant factors and stated the BIA's reasons for denying the requested relief as we have previously instructed the BIA to do. See Ramirez-Durazo, 794 F.2d at 498. Requiring the BIA to conduct an even more thorough analysis of petitioner's extreme hardship claim would indeed be to require the BIA to "write [the] exegesis on every contention"--a concept rejected by the en banc court in Hernandez-Cordero, see 819 F.2d at 563, and rejected by us.
 
 
 43
 Accordingly, the BIA did not abuse its discretion by failing to consider the cumulative impact of petitioner's various extreme hardship factors.
 
 CONCLUSION
 
 44
 For the forgoing reasons, we will not overturn the BIA's decision denying petitioner's application for suspension of deportation. PETITION DENIED.
 
 
 
 *
 The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Tukhowinich introduced evidence that she would go from making eleven dollars an hour at her job in the United States to about fifty cents per hour at a job in her native Thailand
 
 
 [2]
 In Tukhowinich, the petitioner established that deportation and the resulting economic detriment would "severely frustrate what she regards as the overriding mission in her life--to provide for her parents and siblings." Tukhowinich, 64 F.3d at 464
 
 
 [3]
 Petitioner currently supports his wife and child and sends about $50-$100 a month to his disabled sister in Mexico. Petitioner claims that he will no longer be able to provide this support if deported and that this prospective inability will cause him much emotional and psychological hardship