**Sunanta TUKHOWINICH, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 93–71041.**

United States Court of Appeals, Ninth Circuit.

Submitted June 9, 1995 *.

Decided June 19, 1995.

As Amended July 19, 1995.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Glenn N. Kawahara, Los Angeles, CA, for petitioner.

Anthony W. Norwood, Civ. Div., Dept. of Justice, Washington, DC, for respondent.

Before: PREGERSON, POOLE, and D.W. NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Petitioner Sunanta Tukhowinich appeals the Board of Immigration Appeals' (BIA or Board) decision denying her suspension of deportation under § 244(a) of the Immigra-

tion and Nationality Act (INA), 8 U.S.C. § 1254(a), for lack of extreme hardship. We have jurisdiction of the final deportation order under § 106 of the INA, 8 U.S.C. § 1105a. We reverse.

## BACKGROUND

Sunanta Tukhowinich was born on November 12, 1954, in Nakhon Pathom, Thailand. She is the eldest of eight children. At about age 16, Ms. Tukhowinich began working in Thailand for the Moon River Man's tailoring shop preparing sample garments. She worked there for ten years. Ms. Tukhowinich then attended a dress design school for two years to become a professional sample maker. She graduated on August 24, 1981.

On February 13, 1983, she entered the United States via Honolulu, Hawaii as a visitor. She has since remained in the United States. Ms. Tukhowinich settled in the Los Angeles area and found work as a sample maker in the garment industry. She has worked consistently as a sample maker for various employers. At one time Ms. Tukhowinich was the beneficiary of a sixth preference labor certification. The certification ultimately failed, however, because the company that sponsored her went out of business. At the time of the BIA hearing, she was earning $11.00 per hour. Ms. Tukhowinich testified that in Thailand she would earn a maximum of fifty cents per hour for the same type of work.

Of the eight siblings, three sisters have joined Ms. Tukhowinich in the United States. Like her, they are here illegally. Two of the three are working as cooks and the other is attending college in Pasadena. Ms. Tukhowinich is the sole support for the sister attending college and claims her as a dependent on her income tax. The four sisters live together in a small guest house in Los Angeles. In addition to providing for the personal needs for herself and the sister attending college, Ms. Tukhowinich pays their share of the living expenses for the rent, food, and utilities for the guest house. The rest of her income is sent back to her family in Thailand.

Ms. Tukhowinich testified before the Immigration Judge (IJ) that she is the primary source of support for her family. Her elderly parents are retired. Of the remaining four siblings in Thailand, none are working as they are either too young or are attending school. It appears that the family's primary financial source in Thailand is the money sent to them by Ms. Tukhowinich.

Ms. Tukhowinich has never been married nor does she have any children. She is not active in any social clubs or organizations. She maintains no connection socially with anyone in Thailand. She has never accepted welfare support and has filed her federal income tax return every year. She has never been convicted or accused of any crime.

On October 5, 1989, the INS issued an Order to Show Cause charging that Ms. Tukhowinich is deportable pursuant to § 241(a)(2) because she had stayed in the United States past the temporary period granted her as a nonimmigrant visitor. Ms. Tukhowinich concedes her deportability and has applied for suspension of deportation pursuant to § 244(a)(1), 8 U.S.C. § 1254(a). The IJ denied her application for suspension of deportation based upon a finding of no extreme hardship. The BIA affirmed the finding in a short opinion that relied solely upon the IJ's disposition. That opinion failed to consider certain relevant factors. Ms. Tukhowinich now appeals.

## ANALYSIS

### A. Statutory Framework.

Sunanta Tukhowinich seeks a suspension of deportation under § 244(a) of the INA, 8 U.S.C. § 1254(a). Under § 244, to qualify for a suspension of deportation, an alien must show (1) continuous physical presence in the United States for a period of at least seven years immediately preceding the date of application, (2) good moral character, and (3) that he or she is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to himself or herself, or to a spouse, parent, or child who is a citizen or a permanent resident of the United States. 8 U.S.C. § 1254(a)(1).

## B. Standard of Review.

■ We review for an abuse of discretion a decision by the BIA to deny an application for the suspension of deportation for lack of extreme hardship. *See Hassan v. INS*, 927 F.2d 465, 467 (9th Cir.1991).

■ The BIA has authority to "construe 'extreme hardship' narrowly." *INS v. Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031–32, 67 L.Ed.2d 123 (1981). But failure by the BIA to consider all pertinent facts regarding extreme hardship, or failure to articulate the reasons for denying suspension of deportation, is an abuse of discretion. *See Roe v. INS*, 771 F.2d 1328, 1333 (9th Cir.1985); *see also Santana–Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981) ("Because hardship depends on specific circumstances, discretion can be properly exercised only if the circumstances are actually considered.") (Citation omitted.)

## C. Discussion.

Ms. Tukhowinich argues that the BIA's denial of her appeal for suspension of deportation for lack of extreme hardship was an abuse of discretion because the BIA failed to consider all the pertinent facts of her case and did not fully articulate its reasons for the denial.

First, Ms. Tukhowinich contends that the BIA did not review all of the facts of her case. "This court has required the Board to 'state its reasons and show proper consideration of all factors when weighing equities and denying relief.'" *Hassan*, 927 F.2d at 467 (quoting *Mattis v. INS*, 774 F.2d 965, 968 (9th Cir.1985)).

■ We recognize that the BIA has the right to rely solely on an IJ's opinion that "supplies the reasons required by the [INS]...." *Ramirez–Gonzalez v. INS*, 695 F.2d 1208, 1213 (9th Cir.1983). But the BIA has a duty to review the record and assess the IJ's conclusions. Here, although the BIA states that it, "reviewed the record of proceeding" and found that the IJ "adequately considered the evidence of hardship to the respondent," the IJ, in fact, did not consider all the relevant factors that the BIA stated the IJ had considered. (BIA op. at 1.)

■ For example, the BIA states that the IJ considered Ms. Tukhowinich's "age, marital status, good health, family ties in the United States and in Thailand, in addition to the economic and *political conditions* in the respondent's native country." (BIA op. at p. 1) (emphasis added). But, in fact, the IJ's opinion did not mention any aspect of the political unrest in Thailand. Evidence introduced at the hearing before the IJ in the form of various newspaper clippings established that Thailand's democratic government suffered a military coup on February 23, 1991. But the IJ made no mention of these events. Moreover, the IJ did not consider any of the economic or emotional ramifications of the political unrest that Ms. Tukhowinich raised in her testimony. Ms. Tukhowinich testified that since the coup, everyone was afraid and that the economy in Thailand was suffering. Finally, the BIA did not cure the deficiencies in the IJ's opinion by considering the missing factors itself.

■ Furthermore, the IJ's opinion did not give any consideration to the particular and unusual psychological hardship Ms. Tukhowinich would face if deported, and the BIA again did not examine this factor either. Ms. Tukhowinich's testimony reveals that she is the eldest child and is the primary financial support for herself and eight other family members. She is not married, nor does she have an active social life or outside interests. Ms. Tukhowinich spends her life working. After paying her own share of expenses to live here, she uses the rest of her income to support her family here and in Thailand. Ms. Tukhowinich has testified that if deported to Thailand her job prospects are minimal, and given her age and abilities, even if she is able to find work, she would not make enough to continue supporting her family.

"Although economic detriment, without more, does not amount to extreme hardship, the personal hardships that flow from the economic detriment may be a relevant factor for the BIA to consider in determining extreme hardship." *Ramirez–Gonzalez*, 695 F.2d at 1211. In *Santana–Figueroa*, 644 F.2d at 1357, we reversed the BIA's decision for denial of suspension of deportation and

remanded the case for further proceedings that would include consideration of the non-economic hardships that flow from otherwise economic factors. We recognized that, " 'deportation may result in the loss of all that makes life worth living.' " *Id.* (quoting *Bridges v. Wixon,* 326 U.S. 135, 147, 65 S.Ct. 1443, 1449, 89 L.Ed. 2103 (1945)).

In *Ramirez–Gonzalez,* we found that because the petitioner did not demonstrate that he could not find a job in Guatemala, the BIA was not required to consider the "personal hardships that are claimed to flow from the alleged economic detriment." *Ramirez–Gonzalez,* 695 F.2d at 1212. In the case before us, however, the BIA affirmed an opinion in which the IJ found that Ms. Tukhowinich's "prospects for employment in Thailand would be difficult." (IJ op. at 3).

■ In addition, we need not find that Ms. Tukhowinich would be unemployable if deported to Thailand in order to find that she would suffer "severe personal and noneconomic consequences." *Santana–Figueroa,* 644 F.2d at 1357. Ms. Tukhowinich is the eldest child and feels deeply obligated to support her family. (A.R. at 36, 46). Her sole reason for living seems to be to work and thereby support her family. If she were deported to Thailand, she could no longer fulfill this duty because her earned income, if any, would be minimal. Because the loss of financially comparable employment would create not only an economic hardship for Ms. Tukhowinich but would severely frustrate what she regards as the overriding mission in her life—to provide for her parents and siblings—we think the BIA should have considered the implications of her economic loss.

■ Because the BIA relied on an IJ's opinion that did not review factors that the BIA mistakenly thought the IJ had considered, and because the BIA failed to consider the unusual psychological ramifications of Ms. Tukhowinich's economic loss, we find that the BIA did not perform the minimum review necessary to comply with the standard we set forth in *Santana–Figueroa,* 644 F.2d at 1357. "When important aspects of the individual claim are distorted or disregarded, denial of relief is arbitrary. Without prescribing any final result, we must remand

such cases for proper consideration." *Id.* at 1356.

■ Second, Ms. Tukhowinich argues that even if the BIA had referred correctly to the IJ's opinion, the BIA's order does not adequately articulate its reasons for denying her request for suspension of deportation. We agree. The BIA in two sentences reiterates what it mistakenly believes the IJ considered and then, claiming to find no error in the IJ's decision, simply affirms it. The BIA does not discuss its reasoning. The BIA's opinion is not sufficient to fulfill the standard of review set by this court in *Hassan,* 927 F.2d at 467, in which we required the BIA to consider all relevant factors and state its reasons when denying relief: "[A] board decision [is] . . . set aside if it fails to support conclusions with 'reasoned explanation based on legitimate concerns'." *Id.* at 468 (quoting *Vargas v. U.S. Dept. of Immigration,* 831 F.2d 906, 908 (9th Cir.1987)); *see also Roe v. INS,* 771 F.2d 1328, 1333 (9th Cir.1985) ("Failure . . . to articulate the reasons for denying suspension of deportation constitutes an abuse of discretion."); *Mejia–Carrillo v. INS,* 656 F.2d 520, 522 (9th Cir.1981) (Board has a duty to "give reasons which show that it has properly considered the facts which bear on its decision.")

In *Alaelua v. INS,* 45 F.3d 1379, 1382 (9th Cir.1995), we held that the BIA may satisfy the requirement that it state its reasons, by explicitly adopting the IJ's opinion, "[i]f it is clear to us that [the BIA] gave individualized consideration to the particular case, but chose to use the IJ's words rather that its own." We reasoned that when the BIA explicitly adopts a thorough IJ opinion, we need not require the BIA "to say the same thing in its own words." *Id.* The BIA in *Alaelua* took "special note of how comprehensive and well reasoned the IJ's decision was." *Id.* at 1381. Such a statement by the BIA assures us that the BIA fulfilled its duty to consider all relevant factors. Because the IJ's analysis in *Alaelua* was in fact "careful and thorough," *id.* at 1382–83, we found that the BIA was entitled to rely on it and had fulfilled its duty under *Mattis v. INS* to "state its reasons and show proper consideration of all factors. . . ." 774 F.2d at 968.

The instant case is distinguishable. Here the BIA did not explicitly adopt the IJ opinion. In *Alaelua,* the BIA specifically stated that it was affirming the IJ's decision "based upon and for the reasons set forth in that decision." *Alaelua,* 45 F.3d at 1381. In contrast, here the BIA concludes its opinion by stating: "Finding no error in the decision of the immigration judge, we, accordingly, affirm his decision and dismiss the appeal." (BIA op. at 1). This language does not "make[ ] it clear" that the BIA adopted the IJ's reasoning. *Alaelua,* 45 F.3d at 1382. The BIA merely evaluated the IJ's decision but did not clearly adopt the IJ's reasoning. Therefore, the BIA did not fulfill its obligation under *Mattis* to provide reasons for its decision to deny relief.

In addition, the BIA's statement that the IJ "adequately considered the evidence of hardship," (BIA op. at 1), does not provide us the assurance required by *Alaelua* that the BIA itself consider all relevant factors. Unlike in *Alaelua,* we cannot be sure here that the BIA is actually adopting reasoning that it considers satisfactory to fulfill its own burden of de novo appellate review.

Most importantly, as we discussed above, the IJ's opinion here is not "careful and thorough" because it fails to discuss important factors of Ms. Tukhowinich's case, e.g., political unrest in Thailand. *Alaelua,* 45 F.3d at 1382. Therefore, the BIA may not properly rely on the IJ's opinion in this case to meet the BIA's burden of supporting its conclusion with "reasoned explanation based on legitimate concerns." *Hassan,* 927 F.2d at 468 (quoting *Vargas,* 831 F.2d at 908).

Because the BIA mistakenly referred to material not actually considered by the IJ, relied on an IJ's opinion lacking in consideration of all the relevant factors, and failed to support its conclusions with reasoned explanations, we reverse and remand to the BIA for further proceedings consistent with the views herein expressed.

Reversed and Remanded.