98 F.3d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Justin AREOLA-CALDERON, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-70226.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 19, 1996.*
Decided Oct. 3, 1996.
 
 Petition to Review a Decision of the Board of Immigration Appeals, No. Aik-lsc-mys.
 B.I.A.
 REMANDED.
 Before: KOZINSKI and LEAVY, Circuit Judges, and SCHWARZER,** District Judge.
 MEMORANDUM***
 PER CURIAM:
 
 FACTS AND PROCEDURAL BACKGROUND
 
 1
 Petitioner Justino Arreola-Calderon is a 45-year-old citizen of Mexico who entered the United States illegally in 1985. In 1989 and 1990, his wife and six children, all Mexican citizens, illegally entered the country to join him. Petitioner worked here as a carpenter until he was injured on the job in September 1992.
 
 
 2
 On November 14, 1991, the INS issued an Order to Show Cause why Arreola-Calderon should not be deported for having entered the United States without inspection, in violation of section 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1251(a)(1)(B). Arreola-Calderon applied for suspension of deportation.
 
 
 3
 On October 27, 1992, the Immigration Judge ("IJ") held a hearing on this application. In support of his application, Arreola-Calderon supplied affidavits and testimony as to the emotional effects his deportation would have upon himself and his children in readjusting to life in Mexico, and the difficulty of securing adequate medical care for his daughter, who has a heart condition. He also asserted that, if deported, he would be unable to find work in his town.
 
 
 4
 The IJ found that Arreola-Calderon had been physically present in the United States for the last seven years and had been a person of good moral character. The IJ concluded, however, that Arreola-Calderon had not established that deportation would cause "extreme hardship," under section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1), to himself or to individuals contemplated within the scope of the statute. (R.A. 110.) The IJ found that Arreola-Calderon had proved "economic disadvantage and emotional hardship, but that he has not established advance [sic] age, serious illness, unusual family ties or any unique disadvantage, which would set him apart from most other improperly documented aliens." (R.A. 110.) The IJ also specifically noted that while Arreola-Calderon's children, who are also illegal aliens, are not designated in the statute, he had considered the effect of Arreola-Calderon's deportation upon them but "only to the extent that it intensif[ied] the hardship upon [Arreola-Calderon]." (R.A. 110.) Accordingly, the IJ denied the application and entered an order of deportation.
 
 
 5
 Arreola-Calderon timely appealed the IJ's decision denying his application for suspension of deportation to the Board of Immigration Appeals (BIA). The BIA reviewed the IJ's decision and concluded that the IJ had "carefully considered the potential hardships [Arreola-Calderon] would face if he were to be deported." (R.A. 67.) It dismissed the appeal on September 8, 1993, finding no basis for disturbing the IJ's finding that Arreola-Calderon did not meet the statutory criterion of extreme hardship. (R.A. 67.) The dismissal made the order of deportation final.
 
 
 6
 Arreola-Calderon filed a motion to reopen with the BIA on November 15, 1993. (R.A. 13.) He sought to introduce new evidence of "extreme hardship," such as medical reports detailing the extent of his back injury and his inability to work as a carpenter. Apparently the injury had occurred prior to his deportation hearing, but the seriousness of his injury was not realized for some months. The BIA denied this motion on February 9, 1994, because Arreola-Calderon had failed to demonstrate that the newly submitted evidence was previously unavailable. (R.A. 2.)
 
 
 7
 Meanwhile, on December 2, 1993, Arreola-Calderon filed a timely petition for review of the deportation order in this court. On May 10, 1994, Arreola-Calderon withdrew this petition, however, based on counsel's belief that it had been filed before this court had jurisdiction. Arreola-Calderon concurrently filed a second petition for review of the denial of his motion to reopen and of the underlying deportation order and summary dismissal of his appeal.
 
 DISCUSSION
 I. JURISDICTION
 
 8
 The court has jurisdiction to review a deportation order if a petition for review is filed within 90 days of the issuance of the final deportation order. See § 106(a) of the INA, 8 U.S.C. § 1105a(a)(1). The filing of a timely petition for review is "mandatory and jurisdictional" and is "not subject to equitable tolling." Stone v. INS, 115 S.Ct. 1537, 1549 (1995). Instances in which we have jurisdiction over an untimely immigration appeal will be rare. Caruncho v. INS, 68 F.3d 356, 359 (9th Cir.1995).
 
 
 9
 Because Arreola-Calderon dismissed his first petition and refiled more than 90 days after the summary dismissal, his petition is untimely unless the filing of the motion to reopen stayed the effect of the summary dismissal. Stone specifically rejected this proposition and, sub silentio, overruled earlier Ninth Circuit cases adopting it. In Stone, the Court interpreted amended section 106(a) as giving the court of appeals jurisdiction to review the petition even while a motion to reopen is pending. Id. at 1543 (§ 106(a)(6) "directs that the motion to reopen or reconsider is to be consolidated with the review of the order, not the other way around. This indicates ... that the action to review the underlying [deportation] order remains active and pending before the court."). It concluded that there is no tolling rule in the immigration context. Id. at 1544; see Pablo v. INS, 72 F.3d 110, 112-13 (9th Cir.1995) (holding that jurisdiction to review exists where motion to reopen filed before petition). This appeal presents the other side of the coin from Pablo, i.e., whether the period for filing a petition continued to run while a motion to reopen remains pending. Stone leaves no doubt that this question must be answered in the affirmative.
 
 
 10
 While under Stone this court would not have jurisdiction of the petition to review the summary dismissal, this court has said that "in unique circumstances, if a party is 'misled by the words or conduct of the court,' an appellate tribunal may have jurisdiction to hear an otherwise untimely appeal." Shamsi v. INS, 998 F.2d 761, 762 (9th Cir.1993). This is such a case. In Ogio v. INS, 2 F.3d 959 (9th Cir.1993) ( overruled by Pablo, 72 F.3d 110), decided on August 16, 1993, we specifically rejected the argument that the amendment of section 106(a) of the INA overruled this circuit's line of cases following Chu v. INS, 875 F.2d 777 (9th Cir.1989) ( overruled by Pablo, 72 F.3d 110). The court reiterated the rule under Chu that "if the alien seeks to reopen his case with the BIA before he files a petition for review, he must wait to ask for his one hearing in the Ninth Circuit until after the BIA has ruled on his motion to reopen." Id. at 960 (emphasis in original). Thus, only a few months before Arreola-Calderon filed his motion and, upon its denial, his petition, this court specifically told him that this was the procedure he was required to follow. Here, as in Shamsi, "the record clearly shows that [petitioner] was given misleading advice," indeed, advice that turned out to be categorically wrong. Under these circumstances, it would be unjust to punish Arreola-Calderon and his lawyer for following Ninth Circuit law because it was overruled two years later by the Supreme Court. Accordingly, we will assume jurisdiction of the petition to review the summary dismissal.
 
 
 11
 Because the petition to review the denial of the motion to reopen was timely filed, we also have jurisdiction to review that order. 8 U.S.C. § 1105a(a)(1); Williams v. INS, 795 F.2d 738, 742 (9th Cir.1986) (reviewable orders include a petition for review from the denial of a motion to reopen).
 
 
 12
 II. DENIAL OF THE APPLICATION FOR SUSPENSION OF DEPORTATION
 
 
 13
 The BIA's determination of whether extreme hardship has been demonstrated is reviewed for abuse of discretion. Hassan v. INS, 927 F.2d 465, 467 (9th Cir.1991). "The Attorney General ... [has] authority to construe 'extreme hardship' narrowly should [she] deem it wise to do so. Such a narrow interpretation is consistent with the 'extreme hardship' language, which itself indicates the exceptional nature of the suspension remedy." INS v. Wang, 450 U.S. 139, 145 (1981). However, failure to consider relevant factors, or failure to articulate the reasons for denying suspension of deportation constitutes an abuse of discretion. Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995).
 
 
 14
 The BIA issued a brief order stating that the IJ "carefully considered the potential hardships [Arreola-Calderon] would face" and that it "[found] no basis for disturbing the [IJ's] finding that [Arreola-Calderon] did not meet the statutory criterion of extreme hardship." (ER 67-8.) In Tukhowinich, we "recognize[d] that the BIA has the right to rely solely on an IJ's opinion that 'supplies the reasons required by the [INS]....' " Id. at 463 (quoting Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1213 (9th Cir.1983)). We went on to say that "the BIA may satisfy the requirement that it state its reasons, by explicitly adopting the IJ's opinion, '[i]f it is clear to us that [the BIA] gave individualized consideration to the particular case....' " Tukhowinich, 64 F.3d at 464 (citing Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995) (emphasis added)).
 
 
 15
 The closest the IJ comes to analyzing the relevant factors is in a single sentence:
 
 
 16
 We also find, that [Arreola-Calderon] has proved economic disadvantage and emotional hardship, but that he has not established advance [sic] age, serious illness, unusual family ties or any unique disadvantage, which would set him apart from most other improperly documented aliens.
 
 
 17
 If this statement means that Arreola-Calderon must show the presence of some additional factor other than the combination of economic disadvantage and emotional hardship, the statement is legally incorrect: in some circumstances, economic disadvantage and emotional hardship can be so pronounced as to constitute "extreme hardship" under the regulations. See Alaelua v. INS, 45 F.3d 1379 (9th Cir.1995).
 
 
 18
 Alternatively, if the statement means that Arreola-Calderon's particular circumstances are not of sufficient weight, standing alone, to show extreme hardship, the findings are deficient--there is no analysis of the degree of severity of Arreola-Calderon's economic and emotional situation if he were deported. The IJ made only conclusory statements about the severity of the impact on Arreola-Calderon in the decision:
 
 
 19
 Indeed we would expect any hard working alien, who is deported to an economically deprived country, after residing in the United States for 7 years, to suffer hardship and face the problems that the respondent and his family will encounter in Mexico. In short, we see no unique hardship, or unusually severe hardship, that Mr. Arreola will suffer if he is deported to Mexico, that approaches the level of hardship required to warrant a finding of "extreme hardship."
 
 
 20
 The IJ thus asserts that Arreola-Calderon is not unique, but ignores those factors that might distinguish him from the usual case. The IJ correctly rejected consideration of the hardship on Arreola-Calderon's immediate family. See 8 U.S.C. § 1254(a). But the IJ erred in failing to analyze the effect on Arreola-Calderon personally of sending him to a country where the nearest medical care for his daughter's heart condition is eight hours away by car and where Arreola-Calderon has no car. The decision does not discuss the possible effects on Arreola-Calderon's emotional health if he is deported but his family remains. See Cerrillo-Perez v. INS, 809 F.2d 1419 (9th Cir.1987). Nor does it discuss the degree to which his family ties in the United States (five brothers-in-law, two sisters, and one brother, all lawfully in the United States) would make it more difficult on Arreola-Calderon to leave.
 
 
 21
 Accordingly, we remand to the BIA for consideration of Arreola-Calderon's appeal in light of all relevant factors. In doing so we express no view on the merits. Our disposition of the appeal makes it unnecessary to address the denial of the motion to reopen.
 
 
 22
 REMANDED. COSTS TO PETITIONER.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Arreola-Calderon's request for oral argument is denied
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3