110 F.3d 68
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alejandro ENRIQUES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70560.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 9, 1996.
Decided April 1, 1997.
 
 Petition for Review of a Decision of the Immigration and Naturalization Service, No. Aqi-evf-fjn.
 BIA
 REVIEW GRANTED.
 Before: FARRIS, BEEZER, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Alejandro Enriques, a Philippine citizen living illegally in the United States, has been ordered deported. At his deportation hearing he moved for suspension of deportation under § 244(a)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1254(a)(1), which allows the Immigration and Naturalization Service (INS) to suspend deportation if, inter alia, deportation will cause the alien "extreme hardship." The immigration judge found that deportation would not cause Enriques extreme hardship and the Board of Immigration Appeals (BIA) dismissed his appeal. We now grant his petition for review.
 
 I. Standard of Review
 
 3
 The court of appeals reviews decisions denying suspension of deportation only for abuse of discretion, Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995), and may not substitute its own understanding of the meaning of extreme hardship for that of the INS. INS v. Jong Ha Wang, 450 U.S. 139, 144 (1981). To exercise its discretion properly, the BIA must give full consideration to "all pertinent facts regarding extreme hardship," Tukhowinich, 64 F.3d at 463, articulate reasoned explanations for its conclusions, Hassan v. INS, 927 F.2d 465, 467-68 (9th Cir.1991), and consider whether the cumulative effect of the alien's hardships amounts to extreme hardship. Prapavat v. INS, 662 F.2d 561, 562 (9th Cir.1981).
 
 II. Extreme Hardship
 
 4
 Enriques argues that the BIA abused its discretion by failing to consider properly various hardships he and his family will suffer if he is deported.[1] While we find that the BIA properly considered several of the hardships asserted by Enriques, we conclude that the BIA did not properly consider the threat of political violence Enriques faces if he is deported.
 
 A. Hardship to Enriques
 
 5
 Enriques offered evidence to show that deportation would (1) condemn him to poverty, (2) separate him from his child, (3) separate him from the mother of his child, and (4) expose him to political violence in the Philippines. The BIA properly addressed each of the first three claims and therefore did not abuse its discretion with respect to these claims. Because it did not address the fourth claim, however, the BIA abused its discretion.
 
 
 6
 First, the BIA properly addressed Enriques' claim that deportation would cause him economic hardship. According to Enriques, he is now paid $400 a week (presumably more than he would make in the Philippines), he gives much of his income to his parents, child, and siblings, he has no assets in the Philippines, and he has a Visa Card debt that he would become unable to pay on Philippine wages. The BIA considered this evidence, but concluded that Enriques' economic hardship would not be extreme because it would be no more than the common result of deportation. This was not an abuse of discretion. See Perez v. INS, 96 F.3d 390, 392 (9th Cir.1996) (common economic results of deportation not extreme). To be extreme, economic hardship must either lead to additional "personal hardships," Tukhowinich, 64 F.3d at 463 (frustration of desire to support family), or be "exceptionally severe," Santana-Figueroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981) (complete inability to find job).
 
 
 7
 Second, the BIA squarely addressed Enriques' claim that separation from his child would cause him extreme hardship. It is true that "[t]he most important single [hardship] factor may be the separation of the alien from family," Mejia-Carrillo v. INS, 656 F.2d 520, 522 (9th Cir.1981); see Gutierrez-Centeno v. INS, 99 F.3d 1529, 1533 (9th Cir.1996), and that when a parent has argued that separation will cause him hardship, "hardship to the parent resulting from the separation ... must be considered on a case by case basis." Cerrillo-Perez v. INS, 809 F.2d 1419, 1426 (9th Cir.1987). Enriques, however, did not offer specific evidence to show that separation from his child would cause him extreme hardship: rather, he testified only that he lives with his child and that he doesn't want to leave his child. Thus, the BIA did not abuse its discretion by finding that this separation would not cause Enriques extreme hardship. Id. (BIA need not find hardship unless alien shows more than mere existence of a child).
 
 
 8
 Third, the BIA properly considered Enriques' contention that separation from the mother of his child would cause him extreme hardship. Again, Enriques offered hardly any evidence to show that this separation would cause him hardship, testifying only that he lives with the mother of his child, that he plans to marry her after resolving his immigration status, that he doesn't want to leave her, and that she won't go to the Philippines with him because she has an immigration case pending and wants to stay in America. Having considered this evidence, the BIA did not abuse its discretion by finding that severance of this relationship would not cause extreme hardship. While severance of a "family-type" relationship can sometimes amount to extreme hardship, Contreras-Buenfil v. INS, 712 F.2d 401, 403 (9th Cir.1983) (separation from domestic partner), Enriques did not offer any specific evidence showing that separation would cause him extreme hardship in this case.
 
 B. Political Violence
 
 9
 The BIA, however, did not properly address Enriques' contention that deportation would cause him extreme hardship because it would expose him to political violence in the Philippines. Enriques offered extensive evidence to show that deportation would expose him to possible political violence, including testimony taking up more than five pages of trial transcript and documentary evidence taking up 76 pages of the record. He testified that the reason he left the Philippines was that the New People's Army (NPA), a well-known militant group, had been pressuring him to join them. He explained that he feared the NPA because people who resist them sometimes "disappear," and added that he thought the NPA would still recognize him and would harm him. He repeated these claims on cross-examination, and introduced into the record 76 pages of reports from human rights watchdog groups, including Amnesty International, specifically describing the murderous tactics used by the NPA in recent years.
 
 
 10
 The BIA did not address Enriques' political violence claim. It made absolutely no reference to the NPA, to Enriques' testimony about his encounters with the NPA, or to Enriques' documentary evidence about the NPA. Indeed, the BIA made absolutely no reference to political violence, or any kind of violence, at all. This failure was an abuse of discretion.
 
 
 11
 The INS contends that under Kashefi-Zihagh v. INS, 791 F.2d 708, 710 (9th Cir.1986), the BIA need not consider Enriques' political violence claim. Kashefi-Zihagh, however, does not apply to the kind of political violence alleged in this case. Kashefi-Zihagh held that the BIA may decide to "give consideration to persecution claims only under applications for asylum ... and not with applications for suspension of deportation." Id. at 710 (emphasis added). Enriques' claim of political violence, however, is not a persecution claim that could be considered under the asylum statute. To show persecution for the purpose of an asylum application, an alien must show that he is persecuted "on account of race, religion, nationality ... social group, or political opinion," INA § 101(a)(42). Enriques offered no evidence to show that the NPA threatened him "on account of" his membership in any of these groups--his evidence showed only that the NPA had pressured him to join them. As the Supreme Court has made clear, such pressure cannot in itself constitute persecution for the purpose of the asylum statute. INS v. Elias-Zacarias, 502 U.S. 478, 481-84 (1992) (alien sought asylum from "persecution" by guerilla militia that had pressured him to join; held, pressure to join is not persecution for the purpose of the asylum statute because it is not on account of any of the statutory bases). Thus, the political violence that Enriques claims is not the sort of violence that the BIA may ignore under Kashefi-Zihagh.
 
 
 12
 Enriques' political violence claims are governed by a different line of cases. Since Kashefi-Zihagh was handed down in 1985, this Circuit has repeatedly held that the BIA must consider an alien's claim that deportation will expose him to political violence. In Gutierrez-Centeno, for example, where the alien alleged that she would be a target for political violence in El Salvador, we held that the BIA abused its discretion by failing to consider this hardship: "the political situation in Nicaragua is also a factor that should have been considered." 99 F.3d at 1533-34. Likewise, in Tukhowinich, we held that the BIA abused its discretion because it did consider the "political unrest" in Thailand. 64 F.3d at 463. Similarly, in Watkins v. INS, 63 F.3d 844, 849 (9th Cir.1995), where the alien feared "retributive violence" by the Philippine government, we held that the BIA abused its discretion because "it failed to consider in its decision the fact that the family fears retributive violence." These cases confirm that Kashefi-Zihagh is limited to claims of persecution that can be considered under the asylum statute, and that claims of political violence must otherwise be addressed in the BIA's hardship analysis. Under these cases, the BIA was required to address Enriques' contention that deportation would expose him to political violence in the Philippines. It did not do so.[2]
 
 C. Hardship to Enriques' family
 
 13
 Enriques also argued that his deportation would inflict various hardships on his family. In particular, he argued that his deportation would cause extreme emotional, economic, and medical hardships for his parents, and that separation from her father would cause his child extreme hardship. The BIA properly addressed each of these claims.
 
 
 14
 First, the BIA properly addressed Enriques' claims that deporting him would cause his parents extreme emotional, economic, and medical hardships. For example, the BIA considered Enriques' evidence that separation would cause his parents emotional distress, but reasoned that any such distress would be mitigated by the presence of Enriques' two United States citizen brothers. Likewise, the BIA considered Enriques' evidence that his deportation would cause his parents economic hardship, but reasoned that the hardship would be no more than the common result of deportation, Perez, 96 F.3d at 392 (common economic results of deportation not extreme hardship), and that Enriques' citizen brothers could help their parents compensate. Finally, the BIA acknowledged Enriques' evidence that his deportation would cause his mother hardship because she relies on his help with her diabetes-related disabilities, see, e.g., Watkins, 63 F.3d at 850 (extreme hardship can be shown when deportation exacerbates medical problem); Biggs v. INS, 55 F.3d 1398, 1401-02 (9th Cir.1995) (same), but concluded that any such hardship would not be extreme based on the mother's testimony that she regularly babysits for Enriques' one-year-old child and on her apparent physical good health at the hearing. Thus, the BIA considered each hardship and gave a reasoned explanation for its conclusion that it was not extreme.
 
 
 15
 Second, the BIA properly considered Enriques' claim that his deportation would cause extreme hardship to his child. Enriques' evidence was sparse: he testified only that he, his child, and the child's mother currently live together, that he currently supports his child, and that, because the child's mother will neither leave the United States nor part with her child, deportation will separate father from child. While it is true that separation of parent and child can cause the child extreme hardship, and that failure to consider this hardship is an abuse of discretion, Perez, 96 F.3d at 392-93, here Enriques did not offer evidence to show that the separation would in fact cause extreme hardship to the child. Thus, the BIA did not abuse its discretion by rejecting Enriques' claim of hardship on this basis.
 
 
 16
 In sum, the BIA properly addressed all but one of Enriques' claims of extreme hardship. The BIA's failure to address his political violence claim was an abuse of discretion and requires that Enriques' petition for review be granted. In so holding, we hold only that the BIA must consider and address Enriques' political violence claim. We cannot determine from the record whether or not there is validity to this claim.
 
 
 17
 PETITION GRANTED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under § 244 of the INA, the BIA must consider whether deportation will cause extreme hardship either to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence
 
 
 [2]
 Enriques sometimes also states that he fears persecution. However, he clearly states that he is making a claim based on "political conditions" and "the political situation." POB at 15-16 (discussing "political ... situation" and "political and economic conditions" without referring to "persecution"). In so doing, he clearly brings a claim within the scope of Centeno-Gutierrez, Tukhowinich, and Watkins. Enriques' reference to persecution, then, can best be understood either as a separate claim, which the BIA may ignore under Kashefi-Zihagh, or as an inartful misuse of the term persecution to describe a claim which does not meet the statutory definition of a persecution claim