NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 30 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PATRICIA YURIT ZAMORA FLORES;
C. M. W. Z.; E. J. W. Z.,

Petitioners,

v.

TODD BLANCHE, Acting Attorney
General,

Respondent.

No. 25-3331

Agency Nos.
A215-935-347
A215-935-348
A215-935-349

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 11, 2026
San Francisco, California

Before: H.A. THOMAS and JOHNSTONE, Circuit Judges, and VERA, District
Judge.[**]
Dissent by Judge VERA.

Patricia Yurit Zamora Flores and her two minor children are natives and

citizens of Mexico. They petition for review of a decision of the Board of

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Hernan Diego Vera, United States District Judge for
the Central District of California, sitting by designation.

Immigration Appeals ("BIA") dismissing their appeal from an Immigration Judge's ("IJ") (collectively, the "Agency") denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] "Where the BIA conducts its own review of the evidence and law, rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020) (quoting *Rodriguez v. Holder*, 683 F.3d 1164, 1169 (9th Cir. 2012)). We review legal questions de novo and factual findings, including a persecutor's motive, for substantial evidence. *See id.*; *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 893 (9th Cir. 2021) (reviewing the Board's determination that a petitioner "was targeted by the police because he was a suspected gang member, not because of his political . . . opinion" for substantial evidence). We have jurisdiction under 8 U.S.C. § 1252. We deny the petition.

1. The record does not compel the conclusion that a protected ground, including Zamora-Flores's family-based proposed social group, was "a central reason" or "a reason" for the abuse inflicted upon her by her former partner, Christian. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017)

---

[1] Zamora Flores's two minor children are listed as derivative beneficiaries of her asylum application. Although her two minor children filed separate Form I-589 applications, their applications referred to Zamora Flores's application.

(en banc); *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1018 (9th Cir. 2023). Substantial evidence supports the Agency's conclusion that it was Christian's drug use that motivated his abuse, not Zamora Flores's familial relationship with him or her membership in any gender-based social groups. In the proceedings before the Agency, Zamora Flores rested on her declaration, which mentioned that Christian was "always on drugs" when he began assaulting her again following their move to Ensenada. Her testimony upon examination before the IJ was that Christian "was always high" when he mistreated her. And in their brief on appeal, Petitioners do not cite to any evidence to support their claim that substantial evidence undermines the Agency's conclusion.[2]

2. Substantial evidence also supports the Agency's denial of Petitioners' claims for CAT relief. The record supports the Agency's determination that Petitioners have not established that it is more likely than not that they will be subjected to torture and that such torture would be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R.

---

[2] "The lack of a nexus to a protected ground is dispositive of [the petitioner's] asylum and withholding of removal claims." *Riera-Riera v. Lynch*, 841 F.3d 1077, 1081 (9th Cir. 2016). We therefore need not reach Zamora Flores's remaining arguments. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

§ 1208.18(a)(1); *see also* 8 C.F.R. § 1208.16(c).

**PETITION DENIED.**[3]

---

[3] The temporary stay of removal remains in place until the mandate issues.

VERA, District Judge dissenting

FILED

APR 30 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I respectfully dissent.

The "substantial evidence" standard of review is highly deferential. It requires appellate courts to affirm factual findings by the Agency unless a reviewing court finds that a contrary result is "compelled" by the record. 8 U.S.C. § 1252(b)(4)(B). But the standard is not all-forgiving. It does not allow the Agency to misrepresent key aspects of the factual record in support of its findings. *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011) (granting petition for review, vacating, and remanding where the agency "misstat[ed] the record," "mischaracteriz[ing] the record with respect to one of the expert's consistency with the State Department reports" and "criticiz[ing] that expert's testimony on a basis belief by the record"); *Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir. 2018) (substantial evidence does not support BIA's determination regarding persecution when "the BIA mischaracterized what Quiroz Parada endured"). It does not permit an immigration judge to ignore compelling and unrebutted evidence of nexus based on the proffered PSG. *De Leon v. Garland*, 51 F.4th 992, 1005 (9th Cir. 2022) ("[W]here there is any indication that [an IJ or] the BIA did not consider all of the evidence before it . . . the decision cannot stand." (second alteration in original)

(quoting *Cole*, 659 F.3d at 771–72).[1] And it certainly does not sanction the misapplication of the applicable legal standard for determining nexus. Because the Agency's decision does all three, I would reverse and remand.

First, the Agency misconstrued the factual record relating to the substance abuse history of Petitioner's husband. The IJ's key factual finding was that drugs— as opposed to the many years of intense domestic violence—were the "clear motive" behind the persecution. In primary support of this conclusion, the IJ pointed to the brief period of calm in 2014 while the couple lived in Ensenada. The

---

[1] Other circuits likewise prohibit the selective consideration of the record that ignores evidence. *See, e.g.*, *Mukamusoni v. Ashcroft*, 390 F.3d 110, 123–24 (1st Cir. 2004) (vacating and remanding BIA decision that failed to mention background and country conditions evidence offered by petitioner which, even on "a quick look," would support her claim of persecution); *Chen v. Gonzales*, 417 F.3d 268, 272–75 (2d Cir. 2005) (granting petition for review where the BIA failed to consider evidence in country conditions report that corroborated petitioner's account of persecution, stating "[w]here the immigration court fails to consider important evidence supporting a petitioner's claim, we are deprived of the ability adequately to review the claim and must vacate the decision and remand for further proceedings" (citation omitted)); *Shah v. Attorney Gen. of the U.S.*, 446 F.3d 429, 437 (3d Cir. 2006) ("Nor do we expect [an immigration] judge to selectively consider evidence, ignoring that evidence that corroborates an alien's claims and calls into question the conclusion the judge is attempting to reach."); *Palavra v. INS*, 287 F.3d 690, 693–94 (8th Cir. 2002) (holding that the BIA "failed to perform its fact-finding function" when it failed to discuss supporting evidence in the record, and remanding for reconsideration, stating "[w]hen an agency finds a fact without mentioning or analyzing significant evidence, the agency needs to reconsider its decision"); *Tan v. U.S. Attorney Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (granting petition for review where IJ failed to acknowledge the country condition reports and newspaper articles submitted by the petitioner and "misstated the contents of the record").

IJ stated, citing directly to paragraph 12 of Petitioner's declaration, that "[i]t was only after he began using drugs *again* that the abuse began again as well." Following this logic, the IJ concluded that Petitioner's "own declaration . . . supports the drugs being the primary foundation of [her partner's] harmful behavior . . . ." But paragraph 12 of Petitioner's declaration does not say that. Rather, it states, "Approximately a month after arriving in Ensenada, Christian began once again to beat me.  He started using drugs." The IJ's addition of the word "again" is not harmless. To the contrary, it does most of the heavy lifting for the Agency's nexus-related conclusion that all the violence was perpetrated by Petitioner's partner while "high."[2] Indeed, read accurately, the statement in Petitioner's declaration establishes the exact opposite—namely, that the drug abuse began *after* two violence-filled years in Petitioner's relationship, and therefore could *not* have been the sole nexus for the persecution.[3]

---

[2] The other main source of evidence for the Agency's conclusion is Petitioner's statement under cross-examination that her partner was "always high." But that statement was a clarifying response to a question about whether he was drunk. It was a generalized statement untethered to any time period. And it did not constitute evidence of a *causal* connection between the drug use and the violence. *See Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1016 (9th Cir. 2023) ("For both asylum and withholding claims, a petitioner must prove a *causal* nexus . . . ." (emphasis added)); *id*. at 1018 ("The reasons needed to prove a nexus refer to the persecutor's *motivations* for persecuting the petitioner." (emphasis added)).

[3] The centrality of this factual error to the Agency's decision is illustrated quite clearly by the oral argument in this case. When presenting the record, the

Second, the Agency committed reversible error by cherry-picking the reference to drugs discussed above and ignoring completely the extensive evidence that domestic violence was the primary (or, at the very least, concurrent) driver of the Petitioner's persecution.[4] Although the IJ found the Petitioner to be credible, the IJ's decision did not wrestle with the expansive record of violence based on the PSG. Specifically, there is nothing to indicate that the Agency considered as evidence of nexus Petitioner's unrebutted testimony that the relationship changed and became violent when she first became pregnant at age 21 in 2012. Moreover, the Agency failed to consider the six-year reign of terror revolving significantly around her pregnancies and her gender-based status as a wife and mother, including: (1) the miscarriage-inducing violence at the beginning of their relationship before the substance abuse started; (2) the repeated sexual assaults caused by Petitioner's refusal to continue an intimate relationship; (3) Petitioner's physical and social isolation in the home, without money for food; (4) the threats made at knifepoint during her pregnancies, with the blade poking her pregnant stomach; (5) the kidnapping of Petitioner's children by her partner after an

---

Government likewise misquoted paragraph 12 of Petitioner's declaration as stating that Petitioner's partner began using drugs "again."

[4] Indeed, there is no evidence that, even when he was high or dealing, Christian was violent towards anyone other than Zamora Flores (and his mother, who is also a member of Petitioner's proposed particular social groups)—not other men, not his children, etc.

argument and assault, and (6) the text message, after Petitioner's escape to the United States, that he regretted not having killed her when he had the chance. Judge Berzon makes the relevant point succinctly: "[T]he substantial evidence standard does not insulate from review an IJ's decision that cherry-picks from the administrative record only those facts that would cast doubt on a petitioner's claim, while misstating or failing to acknowledge the existence of those facts that would lend support to an account of persecution." *Zehatye v. Gonzalez*, 453 F.3d 1182, 1191 (9th Cir. 2006) (Berzon, J., dissenting). This Circuit has repeatedly acknowledged this principle. *See Parada*, 902 F.3d at 909, 914-–15 (substantial evidence did not support BIA's determination that harms did not rise to the level of persecution and that petitioner was ineligible for CAT protection because the agency ignored pertinent evidence in the record); *Tukhowinich v. INS*, 64 F.3d 460, 463–64 (9th Cir. 1995) ("When important aspects of the individual claim are distorted or disregarded, denial of relief is arbitrary. Without prescribing any final result, we must remand such cases for proper consideration." (citation omitted)).[5]

---

[5] Commentators have also highlighted this all-too-common deficiency in immigration hearings, pointing out that "immigration judges will often identify a reason for the persecution" that is not a protected ground, "stop there, without considering all of the other reasons for the abuse," and then "rule that the nexus requirement has not been satisfied." *See* Anjum Gupta, *Dead Silent: Heuristics, Silent Motives, and Asylum*, 48 Col. Hum. Rts. L. Rev. 1, 47 (2016). But this is a logical fallacy and misunderstands the appropriate legal standard. *Id.*

And third, reversal is required because the Agency failed to apply the appropriate legal standard to Petitioner's asylum and withholding of removal claims. For asylum, a petitioner "need only demonstrate that [their protected ground] was 'at least one central reason' for the abuse; [they] need not show it was the only reason." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1073 (9th Cir. 2017) (en banc) (quoting *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009)). For withholding of removal, the required nexus showing is even lower: a petitioner must show only that "her protected characteristics will be 'a reason' for her suffering harm in the future." *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1018 (9th Cir. 2023) (citations omitted). This Court has made clear that there can be more than one reason for persecution. "[P]ersecution may be caused by more than one central reason, and an asylum applicant need not prove which reason was dominant." *Parussimova*, 555 F.3d at 741. "That an unprotected ground . . . *also* constitutes a central reason for persecution does *not* bar asylum." *Rodriguez Tornes v. Garland*, 993 F.3d 743, 751 (9th Cir. 2021) (citing *Bringas-Rodriguez*, 850 F.3d at 1073).

While the Agency decision acknowledged this standard, it failed to apply it. By finding that drugs were the "primary foundation" of Petitioner's partner's "harmful behavior," the IJ's decision reveals its own error—merely identifying a "primary" reason cannot be the end of the analysis. The question for our purposes

becomes whether the record presented compels a finding that domestic violence was at least "a reason" or "one central reason" for the persecution. I strongly believe that it does.

A broader point is worth mentioning. The Agency's decision had no patience for the cycle of domestic violence that haunts every page of this lengthy record. But our Circuit *has* been sensitive to this reality. We have observed that "in enacting VAWA, Congress recognized that lay understandings of domestic violence are frequently comprised of 'myths, misconceptions, and victim blaming attitudes,' and that background information regarding domestic violence may be crucial in order to understand its essential characteristics and manifestations." *Hernandez v. Ashcroft*, 345 F.3d 824, 836 (9th Cir. 2003) (citation omitted). Drawing on such "background information," in *Rodriguez Tornes*, this Court understood that domestic abuse is not a purely private, personal matter, but generally involves "views that men should dominate women and squelch female independence." 993 F.3d at 753 n.6; *see also id*. at 755–56 & n.2 (Paez, J., concurring) (citing "decades of publicly available social science research and public policy"). We have recognized that a "contrite," apparently "tranquil" period following serious abuse is part of a "cycle" that in most cases repeats itself. *Hernandez*, 345 F.3d at 836–37. Judge Wardlaw made the point quite bluntly: "[m]en do not beat their wives by accident." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1136 (9th Cir. 2006) (en

banc) (Wardlaw, J., dissenting). "Domestic abusers may be drunk or otherwise incapacitated when they commit their crimes, . . . [b]ut this does not alter the nature of domestic violence as a crime involving the use of force against someone in a domestic relationship . . . ." *Id.* at 1139. That insight could not be more prescient here.